UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WILLIAM B CROCKETT, III, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:23-cv-00281-JMS-MKK |
| WARDEN, | ) ) ) |
| Respondent. | ) ) |

**ORDER DENYING MOTION TO DISMISS WITHOUT PREJUDICE
AND DIRECTING FURTHER PROCEEDINGS**

William Crockett, an Indiana Department of Correction (IDOC) inmate, filed this habeas action challenging a prison disciplinary conviction in WVS 20-05-0026. Dkt. 1. Respondent has filed a motion to dismiss the petition for procedural default. As explained below, Respondent's motion to dismiss, dkt. [12], is **DENIED WITHOUT PREJUDICE**, and the Court **DIRECTS** the following further proceedings.

**I. Legal Standard**

Prisoners in Indiana custody may not be deprived of good-time credits or credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advanced written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. Background

### A. Mr. Crockett's Disciplinary Proceeding

On May 21, 2020, Officer J. Wilson issued a conduct report charging Mr. Crockett with violation of IDOC Adult Disciplinary Code B-203, refusing to submit to testing. Dkt. 12-1. Officer Wilson wrote that he advised Mr. Crockett to submit to a full drug screen but that Crockett stated, "I'm not taking a drug test, I'm guilty, I refuse." *Id.* Officer Wilson wrote that he informed Mr. Crockett he would receive a conduct report and be screened monthly until he passed three consecutive drug tests, but that Crockett still refused to submit to a urinalysis. *Id.* The conduct report does not indicate that a copy of it was delivered to Mr. Crockett, nor did he sign it. *Id.* It is not documented on the form if Mr. Crockett refused to sign it. A Urine Drug Screen Preliminary Test Result Form is in the record, and it also notes that Mr. Crockett said he would not take a drug test. Dkt. 12-2. Mr. Crockett did not sign this form either. *Id.*

According to the screening report, Mr. Crockett was notified of the charge on May 21, 2020, he pleaded not guilty, he requested a lay advocate, he did not wish to call witnesses, he did not request physical evidence, and he did not waive his right to 24-hour notice of his hearing. Dkt. 12-3. The screening officer and a staff witness noted that Mr. Crockett refused screening, and thus, his signature is not on the screening report. *Id.*

A lay advocate was provided for Mr. Crockett. Dkt. 12-4. Mr. Crockett was found guilty at a disciplinary hearing on June 3, 2020, and he was sanctioned with a loss of earned credit time. Dkt. 12-5. It was documented on the hearing report, and witnessed by the lay advocate, that Mr. Crockett refused to attend his hearing. *Id.* Mr. Crockett did not sign the hearing report. *Id.*

### B. Disciplinary Appeal Process

The disciplinary appeal process is governed by the IDOC Policy and Administrative

2

Procedure 02-04-101 (DCAO). Dkt. 12-8. According to the DCAO, "[e]ach committed offender and staff person who has routine contact with offenders shall have access to the disciplinary procedures. The Department shall ensure that copies of these disciplinary procedures are posted or maintained in prominent locations so that staff persons and offenders may have access." *Id.* at 1. "Offenders shall be informed of this policy and administrative procedure in a manner appropriate to ensure understanding and the opportunity for compliance." *Id.* at 2. One of the duties of an offender's lay advocate is "explaining the charged offender's rights in regards to appealing any decision by the Disciplinary Hearing Officer." *Id.* at 26.

The DCAO provides for two levels of administrative review. First, the offender must complete a Disciplinary Hearing Appeal form within 15 calendar days of the disciplinary hearing or of receipt of the disciplinary hearing report. *Id.* at 53. The appeal is reviewed by the Warden or the Warden's designee. *Id.* Second, if the offender is dissatisfied with the outcome of his first appeal, he may file a second appeal to the IDOC Appeal Review Officer within 15 days of receiving the response to his first appeal. *Id.* at 53-54.

### C. Mr. Crockett's Use of the Appellate Process

Mr. Crockett states in his verified petition that he was denied the right to request witnesses, the right to a fair hearing, the right to present a defense, the right to be present at his hearing, the right to speak, the right to a written copy of the facts of the case, and the right to adequate notice. Dkt. 1-3. Mr. Crockett argues in his petition that video footage from the day of the incident would show that the conduct report was false because the officer was not on the range at his cell at the time.[1] *Id.* at 2. Mr. Crockett also checked the boxes on the petition indicating that he appealed to

---

[1] The litigation liaison at Wabash Valley Correctional Facility attests: "Cameras make visual recordings only and do not record sound. Recordings are on a continual loop and record over previous recordings unless requested in a timely fashion. The security video of Crockett's cell area and/or cell would no longer exist," and that drug testing requests "do not always occur at [the inmate's] cell door." Dkt. 12-10, ¶¶ 7-8.

3

the Superintendent and the Final Reviewing Authority, and he wrote that he did not receive responses. *Id.* at 1-2. Mr. Crockett does not identify when he sent any appeals, or to whom he sent them. Mr. Crockett attached a May 12, 2022, offender grievance to his petition, which he submitted at New Castle Correctional Facility, two years after his disciplinary hearing:

> I was not afforded the opportunity to appeal my conduct reports that were grievous time losses . . . . I wear glasses and my glasses were taken at Wabash when I was on lockup. Also I didn't get new glasses until Jan. 2022. I can't see or read without my glasses. I had to request help from the law library in 2022 just to read and write legibly. When I found out I could receive that assistance, before no assistance. I was never given C.A.B. appeal forms to appeal. Couldn't see/blind check with medical and law library. I would like a copy of all my grievous time loss conduct reports and appeal/forms given me the right to appeal all the grievous time loss conduct reports A, B, C, even D if I lost any good time.

Dkt. 1-1 at 36 (errors in original).

Respondent's records from the IDOC offender database show that neither a first nor second-level appeal were received pertaining to the relevant disciplinary charge in this action. Dkt. 12-6; dkt. 12-9. Respondent's record includes two declarations related to Mr. Crockett's use of the disciplinary appeal process. Dkt. 12-10 (Ellis declaration); dkt. 12-6 (Rutledge declaration). A review of Mr. Crockett's records from Wabash Valley Correctional Facility, from February 14, 2018, to July 7, 2021, do not show that Crockett submitted any relevant appeals. Dkt. 12-10, ¶¶ 4-5. A review of Mr. Crockett's records from New Castle Correctional Facility, from July 7, 2021, to September 12, 2023, do not show that Mr. Crockett submitted any relevant appeals. Dkt. 12-6, ¶¶ 4, 6.

### III. Discussion

#### A. Procedural Default Standard

It is well established that state prisoners must exhaust their available state remedies before challenging a prison disciplinary conviction in federal court. *See Love v. Vanihel*, 73 F.4th 439,

4

446 (7th Cir. 2023) (citing 28 U.S.C. § 2254(b)(1)(A), (c)). To properly exhaust a claim and "avoid procedural default, a habeas petitioner must 'fairly present' a claim to each level of the state courts." *Id.* Indiana "has no judicial procedure for reviewing prison disciplinary hearings, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies, and presenting legal contentions to each administrative level." *Id.* (cleaned up).

A petitioner seeking review of defaulted claims has two options. He can show "cause and prejudice for the default" or he can demonstrate that failure to consider the defaulted claims will result in a "miscarriage of justice." *Id.* "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded compliance with the procedural rule." *Id.* (cleaned up). "This normally means petitioner must show that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance impracticable." *Id.* (cleaned up).

To show prejudice, "the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Id.* (quoting *Shinn v. Ramirez*, 142 S.Ct. 1718, 1733 (2022)). To demonstrate a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016).

## B. Evidentiary Hearing

In *Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006), the Seventh Circuit held that "a prison disciplinary board [is] not entitled to the presumption of correctness that 28 U.S.C. § 2254(e) affords to judicial findings." Thus,

> [W]hen a prisoner who seeks a writ of habeas corpus provides competent evidence (such as an affidavit by someone with personal knowledge of the events) contradicting an assertion by the prison disciplinary board on a material question of fact pertinent to an issue of constitutional law, the district court must hold an evidentiary hearing to determine where the truth lies.

*Id.*

The Court cannot grant Respondent's motion to dismiss or rule on the merits of Mr. Crockett's petition based solely on the current record because of the parties' factual dispute. According to Mr. Crockett's sworn petition, the conduct report is false, and he never spoke to the reporting officer or signed the conduct report, he was not allowed to attend a hearing or present a defense, and he had no adequate notice. While Mr. Crockett's statements about any appellate attempts he took are less than clear, perhaps even contradictory with his assertion he was given no adequate notice, the Court gives him the benefit of doubt given the lack of clarity of the petition. For example, perhaps Mr. Crockett means he did not receive the notice of the disciplinary charge until *after* the 15-day window expired to initiate the appellate process, and then any appeals, if he made them or not, were or would have been rejected as unprocessed due to untimeliness. If Mr. Crockett's statements that he was not given notice and he was not permitted to attend a hearing, such that he was aware of his disciplinary conviction and could timely file appeals that were properly accepted are true, then Mr. Crockett would have been deprived of due process and through no fault of his own deprived of the opportunity to complete the administrative appeals process. Thus, he would have shown cause and prejudice to excuse his procedural default, and his petition would likely be granted based on a lack of written notice. *Wolff*, 418 U.S. at 563-67.

Thus, the Court must hold an evidentiary hearing to determine whether Mr. Crockett had notice of his charge and whether he refused to attend his disciplinary hearing, as the disciplinary record suggests, or whether prison officials conspired to convict Mr. Crockett of this offense

without informing him of the charge or inviting him to attend the disciplinary hearing to present his defense, as he claims in his petition. *Johnson*, 467 F.3d at 694.

## IV. Conclusion

The Court takes judicial notice that Mr. Crockett has been transferred to Indiana State Prison. **The clerk is directed to update his address consistent with the distribution in this Order.**

For the reasons explained above, Respondent's motion to dismiss, dkt. [12], is **DENIED WITHOUT PREJUDICE.**

Respondent shall file a notice **within 21 days of the issuance of this Order** stating whether they wish to request an evidentiary hearing.

**IT IS SO ORDERED.**

Date: 8/16/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

WILLIAM B CROCKETT, III
973572
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
Michigan City, IN 46360

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
Katherine.Cornelius@atg.in.gov